# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **CORY MCDANIEL**, on behalf of himself and others similarly situated, | : : : | |
| | : | Case No. 2:20-Cv-4497 |
| Plaintiff, | : : | |
| v. | : : | Chief Judge Algenon L. Marbley |
| | : | Magistrate Judge Chelsey M. Vascura |
| **RECON OILFIELD SERVICES, INC.**, *et al.*, | : : : | |
| | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| **KALEN KLEES**, on behalf of himself and others similarly situated, | : : : | |
| | : | |
| Plaintiff, | : : | Case No. 2:22-cv-1895 |
| v. | : : | Chief Judge Algenon L. Marbley |
| | : | Magistrate Judge Chelsey M. Vascura |
| **RECON OILFIELD SERVICES, INC.**, *et al.*, | : : : | |
| | : | |
| Defendants. | : | |

**JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND BRIEF IN SUPPORT**

Representative Plaintiffs Cory McDaniel ("Representative Plaintiff McDaniel") and Kalen Klees ("Representative Plaintiff Klees") (collectively "Representative Plaintiffs") and Defendants Recon Oilfield Services, Inc. and Triple J Oilfield Services LLC (collectively "Defendants") (collectively Representative Plaintiffs and Defendants shall be referred to as the "Parties") respectfully move this Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations with the assistance of a mediator.

1

The following documents are submitted for the Court's approval:

Exhibit 1: Joint Stipulation of Settlement and Release (the "Agreement")[1], with the following Exhibits:

    Exhibit A: List of all Plaintiffs;

Exhibit 2: Declaration of Adam C. Gedling.

Exhibit 3: Proposed Order

## MEMORANDUM IN SUPPORT

**I.    FACTUAL AND PROCEDURAL BACKGROUND.**

    A.    <u>Summary of the Claims and Procedural History</u>.

On August 31, 2020, Representative Plaintiff McDaniel filed a Complaint (the "McDaniel Action") against Recon Oilfield Services, Inc. and Triple J Oilfield Services LLC, on behalf of himself and other similarly situated current and former field employees. (Gedling Decl. ¶ 9; ECF No. 1).

In the McDaniel Action, Representative Plaintiff McDaniel alleged that Defendants failed to pay hourly, non-exempt field employees overtime for all hours worked in excess of 40 in a workweek in violation of the Fair Labor Standards Act, § 201 *et seq.* ("FLSA"). Specifically, Representative Plaintiff McDaniel alleged that Defendants violated the FLSA by failing to pay all of their pre- and post-shift work, and by modifying their time punches. (Gedling Decl. ¶ 12; ECF No. 1). Defendants deny these allegations and assert that they properly paid their hourly non-exempt field employees, including Representative Plaintiff McDaniel, for all overtime due.

On April 5, 2021, this Court issued an order (ECF No. 24) granting the Parties' joint motion for conditional certification of this case as a collective action of a class defined as follows:

---

[1] Unless otherwise noted, all capitalized words and phrases used throughout this motion and brief shall have the same meaning as set forth in the Joint Stipulation of Settlement and Release.

> All current and former hourly, non-exempt Ohio field employees of Defendants who were paid 40 or more work hours in any workweek from December 30, 2017 and continuing through the final disposition of this case ("FLSA Collective" or "FLSA Collective Members").

Notice and Consent forms were sent to the FLSA Collective Members. Ultimately, 58 individuals ("Opt-In Plaintiffs"), including Representative Plaintiffs,[2] joined the lawsuit.

On April 6, 2022, Representative Plaintiff Klees commenced the Klees Action against Defendants, on behalf of himself and all others similarly situated to him, asserting wage and hour claims under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Ohio Minimum Wage Fair Standards Act, Ohio R.C. 4111.01 *et seq.*, and the Ohio Prompt Pay Act, Ohio R.C. 4113.15. (Gedling Decl. ¶ 10). Specifically, Representative Plaintiff Klees alleged that Defendants violated the FLSA by taking improper deductions from their overtime pay. (Gedling Decl. ¶ 12). Defendants deny these allegations.

The Parties agreed to mediate both cases together, and attended mediation with Jerome F. Weiss, Esq. on October 11, 2022. Prior to the mediation, Defendants provided time and compensation records for Plaintiffs, and Plaintiffs' Counsel performed a damages analysis using the information. After a day of mediation, the Parties reached a settlement. (Gedling Decl. ¶¶ 13-15).

C. Summary of the Key Settlement Terms.

The total settlement amount is $245,000.00. This amount includes: (a) all Individual Payments to Plaintiffs; (b) Representative Plaintiffs' and Opt-In Plaintiff Joshua Shafer's Class Representative Payments; (c) Plaintiffs' Counsel's attorneys' fees and expenses; and (d) costs associated with the Settlement Claims Administrator. (Gedling Decl. ¶¶ 17-18).

---

[2] Representative Plaintiffs and the Opt-In Plaintiffs will collectively be referred to as "Plaintiffs."

3

The amount of unpaid overtime and minimum wages, if any, were the primary disputes between the parties. The Individual Payments, after all deductions above set forth above, reflect approximately 100% of their overtime wage damages based on an additional 5 hours of unpaid work each for each workweek they worked over 40 hours. This amount of time was settled upon as reasonable as a result of information learned during the mediation, settlement discussions, and the informal discovery process. Plaintiffs will receive a proportional payment based on their number of workweeks over 40 hours worked in the relevant time period and their respective rates of pay. This type of allocation is commonly used in class and collective action settlements. (Gedling Decl. ¶ 22). This recovery is not just fair and reasonable, it is exceptional. *See Smith v. SAC Wireless, LLC*, No. 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (citing *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010)) (finding a recovery to be "fair and reasonable" where it "greatly exceed[ed] the typical 7-11% recovery in FLSA cases[]"); *see also Yorba v. Barrington Sch., LLC*, No. 2:21-cv-691, 2022 WL 2436952, at *5 (S.D. Ohio July 5, 2022) (Sargus, J.) (discussing *Smith*, 2022 WL 1744785, at *3) (referencing the same typical recovery of 7-11% in FLSA cases).

In exchange for the total settlement amount in the Agreement, these lawsuits will be dismissed with prejudice, and the Plaintiffs will release Defendants from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, in these lawsuits. (Gedling Decl. ¶ 23).

II.     **PROPRIETY OF APPROVAL OF THE SETTLEMENT.**

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

     A.     The Seven-Factor Standard is Satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, which are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)), *Crawford*, 2008 WL 4724499 at *3.

The Settlement satisfies each of these elements.

1. *No Indicia of Fraud or Collusion Exists.*

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 WL 4673163, at *2 (S.D. Ohio Aug. 12, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). The Agreement was achieved only after arm's-length and good faith negotiations between the Parties, with the assistance of a neutral mediator.

5

(Gedling Decl. ¶ 24). As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

> 2. *The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval*.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted).

If this case had not settled, the Parties would be required to engage in costly litigation, such as additional written discovery, depositions, dispositive motions, trial, and potential appeals. The Settlement, on the other hand, provides substantial relief to the Plaintiffs promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (Gedling Decl. ¶ 26-28).

> 3. *Investigation Was Sufficient to Allow the Parties to Act Intelligently*.

The Parties engaged in substantial investigation and analysis prior to negotiating the Settlement. Specifically, Defendants produced all necessary payroll and timekeeping information, and Plaintiffs' Counsel built a damages model which was used in guiding negotiations. (Gedling Decl. ¶ 13-15).

In addition, the Parties assessed their potential risk of loss. Thus, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

6

4. *The Risks of Litigation Favor Approval.*

The settlement represents a compromise of disputed claims. Specifically, Representative Plaintiffs allege that they and other hourly field employees were not compensated for all overtime wages they earned. On the other hand, Defendants deny these allegations and assert that they fully compensated their hourly field employees for all time worked. (Gedling Decl. ¶ 12, 26).

The Parties also disagree about whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, whether liquidated damages are appropriate, whether some or all of the employees are exempt, and whether the claims alleged can proceed collectively. Defendants also allege that at least some of the employees may be subject to an exemption and not entitled to any overtime. (Gedling Decl. ¶ 26).

Accordingly, if this case had not settled, it is possible that there would be no recovery for the Plaintiffs at all. (Gedling Decl. ¶ 30).

5. *The Opinion of Plaintiffs' Counsel Favor Approval.*

Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions. At all times, they have acted in good faith and have vigorously represented the interests of the Plaintiffs. Importantly, Plaintiffs' Counsel opined that the settlement is fair, reasonable, adequate, and in the best interests of the Plaintiffs (Gedling Decl. ¶¶ 16, 26). "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *5 (S.D. Ohio Aug. 17, 2018). Accordingly, this factor favors approval of the settlement.

6. *The Reaction of Absent Class Members.*

If the Court approves the settlement, the Plaintiffs will receive a payment that reflects approximately 100% of their overtime wage damages based on an additional 5 hours of unpaid

work each for each workweek they worked over 40 hours. Plaintiffs' Counsel has not received any indication that Plaintiffs would object to such payment.

       7.    *The Public Interest*.

"Public policy generally favors settlement of class action lawsuits." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *5 (S.D. Ohio Aug. 17, 2018) (quoting *Hainey v. Parrott*, 617 F. Supp.2d 668, 679 (S.D. Ohio 2007)). Like in *Wright*, "the settlement confers immediate benefits on the Plaintiffs, avoids the risks and expense in further litigation, and conserves judicial resources." *Id.* Thus, as in *Wright*, the Court should find that this factor supports approval of the Settlement.

      B.    <u>The Settlement Distributions Are Fair, Reasonable and Adequate</u>.

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *6 (S.D. Ohio Sep. 9, 2016) (citations omitted).

       1.    *The Individual Payments are Reasonable and Adequate*.

As part of their pre-mediation evaluation, Plaintiffs' Counsel reviewed the class data provided by Defendants' counsel. Damages were calculated by adding unpaid work to each workweek over 40 hours worked for every Plaintiff. Although Defendants contend that Plaintiffs are not owed anything, the Parties agreed to a reasonable settlement that results in Individual Payments that reflect approximately 100% of Plaintiffs' overtime wage damages based on an additional 5 hours of unpaid work each for each workweek they worked over 40 hours. This amount of time was settled upon as reasonable based on the information learned during mediation, settlement discussions, and discovery. (Gedling Decl. ¶ 16, 22, 26). This recovery is not just fair and reasonable, it is exceptional. *See Smith v. SAC Wireless, LLC*, No. 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (citing *Dillworth v. Case Farms Processing, Inc.*, No.

8

5:08-cv-1609, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010)) (finding a recovery to be "fair and reasonable" where it "greatly exceed[ed] the typical 7-11% recovery in FLSA cases[]"); *see also Yorba v. Barrington Sch., LLC*, No. 2:21-cv-691, 2022 WL 2436952, at *5 (S.D. Ohio July 5, 2022) (Sargus, J.) (discussing *Smith*, 2022 WL 1744785, at *3) (referencing the same typical recovery of 7-11% in FLSA cases).

All individual payments will be calculated proportionally based on the number of workweeks over 40 hours each Plaintiff worked and their respective rates of pay. (Gedling Decl. ¶ 22). As such, each Plaintiff will obtain compensation for alleged unpaid wages that are proportional to the amount of workweeks over 40 hours he or she worked for Defendants within the period of time covered by the settlement.

        2.      *Representative Plaintiffs' and Opt-In Plaintiff Shafer's Service Awards are Proper and Reasonable.*

The Agreement provides for a service award of $10,000.00 to Representative Plaintiff McDaniel, $2,500.00 to Representative Plaintiff Klees, and $2,500.00 to Opt-In Plaintiff Joshua Shafer in addition to their individual payments. (Gedling Decl. ¶ 18). Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 WL 6485159, at *8 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010)).

9

Here, the Representative Plaintiffs contributed significant time, effort, and detailed factual information enabling Plaintiffs' Counsel to evaluate the strength of this case and reach a settlement of this matter. While Opt-In Plaintiff Joshua Shafer was not a named plaintiff in the Actions, Opt-In Plaintiff Shafer was a named plaintiff in Plaintiff's First Amended Collective Complaint for Violations of the Fair Labor Standards Act (ECF No. 65-1), and his participation in the Actions was instrumental in reaching a resolution. Further, Representative Plaintiff McDaniel was involved from the commencement of the McDaniel Action and attended the full day mediation in person despite residing out of state, incurring significant travel costs. Representative Plaintiff McDaniel's participation was crucial and enabled the Parties to have productive settlement discussions resulting in the underlying settlement. (Gedling Decl. ¶ 18).

       3.    *The Attorney Fees to Plaintiffs' Counsel Are Proper and Reasonable.*

After the Court has confirmed that the terms of settlement are fair to the Plaintiffs, it may review the Agreement as to the provision of fees and litigation expenses to Plaintiffs' Counsel.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

At the mediation, Defendants agreed not to contest a request of attorney's fees and costs of $95,000. However, Plaintiff requests payment of attorney's fees to Plaintiffs' Counsel in the

amount of one-third of the total settlement amount, or Eighty-One Thousand Six Hundred Sixty-Six Dollars and Sixty-Seven Cents ($81,666.67). (Gedling Decl. ¶ 31). A one-third fee award is "typical for attorney's fees in common fund, FLSA collective actions in this District…" *Hebert v. Chesapeake Operating, Inc.*, Case No. 2:17-cv-852, 2019 WL 4574509 at *8 (S.D. Ohio Sept. 20, 2019) (J. Morrison); See *Morse v. NTI Services, Corp.*, Case No. 2:20-cv-02173, 2021 WL 4350485 at *2 (S.D. Ohio September 17, 2021) (finding attorney fees award that represents one-third of the total settlement amount are reasonable); *Bailey v. Paradies Shops, LLC*, Case No. 2:20-cv-2610, 2021 WL 3662466 at *6 (in finding a one-third attorney fees request to be reasonable, the Court noted, "District courts have approved collective and class actions fee requests when the fee is one-third of the total settlement amount.) (S.D. Ohio August 18, 2021). This "is a normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, *5 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 WL 7508650 (N.D. Ohio July 27, 2018)); *see, also, Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 WL 6485159, *7 (S.D. Ohio Dec. 3, 2019) (approving an award of 33 1/3% of a settlement fund in a wage and hour case); *Call v. CTA Pizza, Inc.*, No. 2:18-cv-00696, 2019 WL 5307071, *5 (S.D. Ohio Oct. 21, 2019) (same); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, *6 (N.D. Ohio Mar. 26, 2019) (same); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, *6-7 (S.D. Ohio Aug. 17, 2018) (same); *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 WL 2095172, *3-5 (N.D. Ohio May 4, 2018) (same); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, *7-8 (N.D. Ohio June 15, 2010) (same).

Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. Thus, Plaintiffs' Counsel "assumed a real risk in taking on this case,

11

preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 WL 6485159, at *7 (S.D. Ohio Dec. 3, 2019).

Finally, courts in this district acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019). Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiff's counsel for their prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

    4. *The Court Should Authorize Reimbursement to Plaintiffs' Counsel of Their Out-of-Pocket Expenses Incurred In This Case.*

Plaintiffs' Counsel should also be reimbursed their litigation expenses, which as of the date of this Joint Motion are $7,032.16. The litigation expenses were reasonable and necessary to prosecute the case and were primarily comprised of the filing fees, the cost of notice distribution following conditional certification, and Plaintiffs' share of the mediator's fee. (Gedling Decl. ¶ 33). In addition, the settlement provides for the Settlement Administrator's fee and costs of $2,805 to be paid from the settlement fund.

"Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 WL 6310376 at *7. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.* Because

Plaintiffs' Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in obtaining the settlement, the Court should award reimbursement of these expenses to Plaintiffs' Counsel and also approve the Settlement Administrator's fee to administer the settlement.

### III.  CONCLUSION.

The Parties submit that this settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve Plaintiffs' Counsel's request for attorney fees and expenses; (3) approve the requested service payments to Representative Plaintiffs and Opt-In Plaintiff Joshua Shafer; (4) approve the payment to the Settlement Administrator; and (5) retain jurisdiction to enforce the settlement if necessary.

Respectfully submitted,

| | |
|---|---|
| **COFFMAN LEGAL, LLC** | **DINSMORE & SHOHL LLP** |
| /s/ Adam C. Gedling | /s/Jeremy D. Smith |
| Matthew J.P. Coffman (0085586) | Michael B. Mattingly (0089847) |
| Adam C. Gedling (0085256) | Jeremy D. Smith (0088539) |
| Kelsie N. Hendren (100041) | 255 East Fifth Street, Suite 1900 |
| 1550 Old Henderson Rd. | Cincinnati, OH 45202 |
| Suite 126 | 513.977.8200 |
| Columbus, OH 43220 | 513.977.8141 (Fax) |
| 614.949.1181 | michael.mattingly@dinsmore.com |
| 614.386.9964 (Fax) | jeremy.smith@dinsmore.com |
| Email: mcoffman@mcoffmanlegal.com | |
| agedling@mcoffmanlegal.com | *Attorneys for Defendants* |
| khendren@mcoffmanlegal.com | |
| | |
| *Attorneys for Representative Plaintiffs and others similarly situated* | |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 20th day of January 2023 a true and accurate copy of the forgoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                   /s/ *Adam C. Gedling*
                                                   Adam C. Gedling